## Lindsay, Appellant, *v.* Union Surety and Guaranty Company.

*Mortgage—Surety—Accounting—Equity.*

A surety company which has guaranteed a purchase money and advance mortgage of a building operation, and which has under the terms of its contract a right to enter in order to complete the buildings, has no right as against the assignee for creditors of the owner and builder to collect rents while it is in possession for the purpose of completing the operation. The surety's rights extended only to such delay or interference with the possession and control of the assignee as was necessary for the performance of the specific purpose of completing the buildings.

Argued Jan. 14, 1901. Appeal, No. 296, Jan. T., 1901, by defendant, from decree of C. P. No. 4, Phila. Co., Dec. T., 1899, No. 268, dismissing bill in equity in case of Daniel S. Lindsay, Trustee, v. The Union Surety and Guaranty Company. Before McCollum, C. J., Mitchell, Fell, Brown, Mestrezat and Potter, JJ. Reversed.

Bill in equity for an account.

Audenried, J., found the facts to be as follows:

On April 9, 1898, Frank S. Zane bought from John Meighan

a tract of land in the city of Philadelphia for $31,300. Upon this he purposed to erect sixty-four houses. To assist him to accomplish this purpose, Meighan agreed to loan him $56,000. It was agreed between them that this advance and the purchase money of the land, amounting together to $87,300, should be secured upon the property by a mortgage, and that the Citizens' Trust and Surety Company (whose assets have all been acquired and whose liabilities have all been assumed by the Union Surety and Guaranty Company, the defendant herein) should issue a policy to Meighan insuring his title as mortgagee of the property and indemnifying him against loss, by reason of the noncompletion of the buildings proposed to be constructed thereon, or the filing of claims against the same by mechanics or material men.

Meighan conveyed the land to Zane, and deposited with the Real Estate Title Insurance and Trust Company of Philadelphia to the credit of the latter's building operation, the $56,000 which he had agreed to advance, subject to the check of the Citizens' Trust and Surety Company, when countersigned by himself. Zane executed and delivered to Meighan his bond for $87,300 and a mortgage on the land which had been conveyed to him. The Citizens' Trust and Surety Company issued to Meighan the policy of insurance and indemnity for which he had stipulated.

On March 2, 1899, having become financially embarrassed, and having, apparently, quarreled with the Citizens' Trust and Surety Company, Zane made a deed of assignment for the benefit of his creditors to Daniel S. Lindsay, the plaintiff, who duly accepted the trust. At this time none of the sixty-four houses begun by Zane were finished and ready for occupancy. Some, of course, were further advanced towards completion than others; but even the five or six most nearly finished were without bathroom conveniences. In some of the houses the studding was not up. Some were not plastered. In many the carpenter's work was not finished. There were no gas or water pipes laid, and none of the houses were connected with the sewer. The streets passing through and around the operation were unpaved. To complete the houses there still remained, subject to the control of the Citizens' Trust and Surety Company, about $10,000.

By this time the relations of the parties concerned in this building venture had become fixed, as follows: Zane's interest had passed to Lindsay, his trustee, for the benefit of his creditors. Meighan had assigned Zane's bond and mortgage to W. Frederick Snyder, along with the policy of insurance issued by the Citizens' Trust and Surety Company. That corporation held $10,000 in trust, to be applied to the completion of the Zane buildings, and was bound by its policy to indemnify Meighan; or rather, Snyder, his assignee, against lien claims upon the houses and the lots on which they stood and also against the actual loss by reason of their noncompletion.

Having qualified as assignee, Lindsay wrote to the Citizens' Trust and Surety Company on March 7, 1899: "As you have a cash fund available (as I learn) solely for the purpose of finishing houses, I respectfully, but most emphatically call upon you to push the work vigorously, and at an early date deliver me the keys of the said sixty-four houses finished complete and ready for occupancy." It was undoubtedly the assignee's right to require the application of any balance of the money advanced by Meighan, left remaining in the control of the Citizens' Trust and Surety Company to the completion of the houses in question, but more than this he could not demand. The trust company's obligation on its policy was to indemnify against loss by reason of the noncompletion of the houses, not to complete them; and that obligation ran in favor of Meighan or Snyder, his assignee, not in favor of Zane or Zane's creditors; and while, for reasons of its own, the trust company might finish the houses, it was in no wise bound to do so.

Acting, however, upon Lindsay's "respectful" and "emphatic" suggestion, the Citizens' Trust and Surety Company entered upon and took possession of the Zane land and proceeded to do what work was required to make the buildings inhabitable. As fast as the houses became ready for occupancy they were rented to tenants by the company's agent. Feeling that as assignee of Zane he was entitled to possession of the property, and to the rents that might be derived from the houses, Lindsay caused his signs to be put upon them, offering them to rent, but, by direction of the trust company, these signs were torn down, and parties sent by him to examine the houses were refused admission. The trust company assumed and exer-

cised full control of the whole building operation as well after as before the completion of the several buildings, and succeeded in finding tenants for fifty-nine of them. Up to February 3, 1900, it had collected from the property rents amounting to $3,136.50. This money, together with the $10,000 remaining of Meighan's advances upon the operation, and between $17,000 and $18,000 of its own funds, the trust company had been obliged to expend in order to complete the houses.

Meanwhile Mr. Snyder had sued out a writ of scire facias upon the mortgage, and on May 5, 1899, had obtained judgment thereon for $95,520.75, under execution, upon which the Zane property was sold by the sheriff on June 5, 1899, for $72,000. It was bought in by Snyder to save his claim. On February 3, 1900, the sheriff executed and delivered a deed to Snyder for the entire property.

The facts above set forth are undisputed, and they are all the facts which have any bearing upon the question raised in this case.

The plaintiff prays that the defendant be required to account to him for the rentals it has collected and pay over to him as assignee for Zane's creditors such moneys as it has thus received.

The question whether Lindsay's proper remedy does not lie at law by way of an action of trespass for mesne profits has not been raised by the parties. We may, therefore, dispose of the matter in these proceedings.

There can be no question that upon delivery of Zane's deed of assignment, Lindsay became entitled to the possession of his real estate. Under his direction the Citizens' Trust and Surety Company entered upon the property for the purpose of completing the houses Zane had begun, but this authority gave it no right to retain possession of the houses after they were finished. As each house was completed, the trust company should have turned it over to Lindsay, who might then have maintained an action of ejectment for its recovery. By retaining the houses after their completion, the trust company became a trespasser and answerable in damages to Lindsay for interfering with his possession. His damages, however, are limited to compensation for the loss of possession. They are measured by the annual value of the land, less an allowance for the expenses necessarily, and in good faith, incurred to secure the profitable enjoyment of

the property. That the defendant must account for its collection of rent is clear. But at the trial this was done. The debit side of its account was fixed at $3,136.50, being its collections of rent amounting to $3,549.50, less $431 paid to Snyder as rent collected after the date of his sheriff's deed. On the other hand, as pointed out above, the trust company has actually spent to repair and complete the houses from which these rents were derived $21,000, at least, over and above the $56,000 advanced by Meighan, of which it will be remembered that $10,000 remained in its hands when Zane assigned to Lindsay. Seeing that Lindsay so emphatically demanded of the trust company the completion of the houses for occupancy, it would be grossly inequitable to permit him now to take in the shape of rent all the benefit of the trust company's expenditures and throw upon it the entire burden of putting the property in the condition necessary to be rent producing. It does not help the plaintiff's claim that the trust company may have been induced to expend more money than was advanced by Meighan in order to prevent an action against it upon its policy held by Snyder. Upon a fair view of this matter, we find that there is no balance of rents received by the trust company over the legitimate and necessary expenditures made by it upon the Zane houses.

The plaintiff is therefore entitled to no payment, and his bill must be dismissed at his cost.

*Error assigned* was decree dismissing the bill.

*Joseph R. Embery*, for appellant.—The defendant company cannot divert the rents, which belonged to plaintiff, to relieve themselves from the obligation of their policy by setting off against these rents the moneys expended by them to complete the houses. A party cannot profit by such wrongful conduct: Sedgwick on Damages (8th ed.), sec. 915; Sutherland on Damages (2d ed.), sec. 999; Green v. Biddle, 8 Wheaton, 1; Gleeson's Est., 192 Pa. 279; Wolf's App., 106 Pa. 545; Maryland Steel Co. v. Gettysburg Electric Ry. Co., 99 Fed. Repr. 150.

*David Jay Myers*, for appellee.—The appellee being in possession under color of right, the appellant, to prevail in a court of equity, "must do equity," that is, he must offer compensa-

tion for the outlay of appellee, because that outlay was essential, as the court below held, to make the property rent producing: Werkheiser v. Werkheiser, 3 Rawle, 326; Fidelity Insurance Trust & Safe Deposit Co.'s App., 106 Pa. 145; Zell's Appeal, 126 Pa. 329.

OPINION BY MR. JUSTICE MITCHELL, May 6, 1901:

Plaintiff was owner of the property as assignee of the purchaser Zane, subject to a purchase money and advance mortgage to the vendor, which was guaranteed by the defendant. When the operation came to a stop by the failure of Zane, the defendant had subject to its control $10,000 of the advance money. Plaintiff then called upon defendant to complete the houses under its contract of indemnity. By the strict terms of the different contracts plaintiff was only entitled to call on defendant for the $10,000 of advance money, to enable him to complete the buildings himself. But defendant by its contract with the mortgagee was bound to see that the houses were completed, or to indemnify the mortgagee for his loss by the failure to do so. Instead therefore of standing upon the letter of the tripartite contract between the plaintiff, itself, and the vendor, and requiring plaintiff to continue the operation on the payment of the agreed advances, the defendant itself assumed the control in accordance with plaintiff's request, went into possession, and proceeded to complete the operation. Presumably it did this in pursuance of its obligation to the mortgagee, and to keep the performance and expense of such obligation, within its own control. This was its plain interest to do.

In this situation the mortgage was sued out, and the mortgagee became the purchaser of the property. Owing to impediments not material to the present controversy, he did not take title for ten months, and in the mean time defendant continued in control, excluded plaintiff from possession, collected rents from some of the finished houses, and claimed to retain them to repay itself for its expenditures in the operation. This bill is for discovery and account for such rents.

The defendant's claim cannot be sustained. Plaintiff was the owner in fee, entitled to the possession and profits of the land until the title passed from him under the sheriff's sale. If defendant was in possession as his agent to complete the

work which by the strict terms of the contract was devolved upon him, then it was bound to account as such agent. If, however, as presumably was the case, it was in for the purpose of completing the houses in performance of its obligation to the mortgagee, then it was in by permission of plaintiff, and its rights extended only to such delay or interference with his possession and control, as was necessary for the performance of that specific purpose. As soon as any portion of the work was done, or in condition to be made a source of revenue without hindrance to the rest of the operation, defendant's right to meddle with it at all or to exclude the plaintiff ceased. He was the owner and the defendant's rights in whichever aspect they may be regarded were subordinate to his.

The acts of the defendant in excluding the plaintiff from possession, tearing down his signs, collecting and retaining the rents, etc., were in excess of its rights and made defendant as to them a trespasser ab initio. If it expended more money than the vendor's advances in its hands, it must seek repayment from the assigned estate on the same basis as the other creditors for a debt arising under a contract prior to the assignment, but it cannot pay itself in preference to them by taking advantage of the accidental circumstance of possession to defeat the right of the assignee holding the legal title for their benefit.

Decree reversed, and bill reinstated with directions to award an account as prayed. Costs to be paid by appellee.